**Farrel Kasey WILLIAMS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 96–182.**

Supreme Court of Wyoming.

Dec. 22, 1997.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Michael Dinnerstein, Director, Defender Aid Program; and Jason Tangeman, Legal Intern, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Julie M. Yates, Student Intern, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant claims that homeowner's insurance which covered some of his victims' losses should relieve him of the restitution obligation as described by his plea agreement and reiterated in the district court's judgment and sentence. Uninterested in rewarding a confessed burglar for the foresight of his victims in maintaining insurance coverage, and even less intrigued by the notion of allowing a felon to profit from his criminal enterprise, we affirm.

## I. ISSUES

Appellant, Farrel Kasey Williams (Williams), states two issues:

*ISSUE I*

Did the trial court err when it declared the insurance companies to be victims without determining subrogation rights?

*ISSUE II*

Did the trial court err when it ordered the appellant to pay restitution to the victims * * * as they have already been compensated by their respective insurance companies?

The State reiterates the issues:

I. Did the district court improperly order payment of restitution to the victims' insurance company?

II. Did the district court properly order appellant to pay restitution to [the] victims * * *, which included moneys paid to them by their insurance companies to cover their losses?

## II. FACTS

In the early months of 1996, four homeowners reported to Cheyenne, Wyoming police that their homes had been burglarized. Two of the victims lost electronic and camera gear while the third had a wallet stolen. Williams was surprised by his fourth victim and fled, only to be captured later, based upon that victim's description. Because he was armed with a pocket knife when apprehended, Williams faced the prospect of one or more aggravated burglary charges, and wisely chose to plead guilty to four simple burglaries pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), thus receiving the benefits of a plea agreement, including a boot camp recommendation, while being relieved of the obligation to give a factual basis for his plea and, more importantly, avoiding the more serious aggravated burglary charges.

The written plea agreement, duly executed by Williams and his counsel, clearly provided that Williams agreed to "pay $50 to the Victim's Compensation Fund and restitution [on] all four counts[.]" Prior to the entry of his guilty pleas, Williams was advised by the district court of the possible sentences he faced, including: "In addition, you'd be required to pay restitution to the victims for any damage done to their residence. Or their property that you stole. * * * Do you understand all that?" Williams replied: "Yes, your Honor, I do." Williams proceeded to plead guilty to four counts of simple burglary pursuant to his plea agreement.

Reviewing the contents of his presentence investigation report (PSI) prior to his sentencing, Williams acknowledged that the restitution amounts contained in the PSI report correctly stated the value of the items he had taken in his burglaries. However, Williams proceeded to object to the PSI recommendation that he reimburse an insurance carrier which had partially reimbursed two of his victims for their losses. Although the sentence pronounced by the district court may have been somewhat ambiguous as to whether the victims or their insurance carrier should be reimbursed, the judgment and sentence specified Williams' obligation to reimburse the two victims claiming losses in the exact amounts of their ascertained losses.

Choosing to focus upon ambiguity in the district court's oral pronouncement of sentence to the exclusion of the clarity found in the written judgment and sentence, Williams timely filed his appeal.

## III. STANDARD OF REVIEW

■ Williams does not attack his written judgment and sentence as failing to reflect

the sentence orally pronounced by the district court. Under such circumstances,

> [a] "written judgment and sentence order may be used to 'clarify an ambiguous oral sentence by providing evidence of what was said from the bench.'" *United States v. Earley,* 816 F.2d 1428, 1431 (10th Cir. 1987) (quoting [*United States v.]* Villano,* 816 F.2d [1448] at 1451 [ (10th Cir.1987) ] ).

*Christensen v. State,* 854 P.2d 675, 678 (Wyo. 1993).

 A sentencing court necessarily enjoys wide discretion in the "'exceedingly difficult'" obligation of determining appropriate penalties for the myriad of situations and individuals which come before it. *Hicklin v. State,* 535 P.2d 743, 754 (Wyo.1975) (*citing Williams v. Illinois,* 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970)). The limits of that discretion are described by statute, and a sentencing court may only impose those sentences which the legislature has expressly authorized. *Keller v. State,* 771 P.2d 379, 386 (Wyo.1989).

## IV. DISCUSSION

 The conclusion of Williams' appellate brief asks "that this Court delete any restitution which was improperly ordered to be paid to the insurance companies and/or the victims." The district court's authority to order restitution from a criminal defendant is detailed by Wyo. Stat. § 7–9–103(a) (1997), the pertinent portion of which reads as follows:

> If restitution is ordered, * * * the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction * * *.

Wyo. Stat. § 7–9–101(a)(i) (1997) defines "criminal activity" as:

> [A]ny crime for which there is a plea of guilty * * * upon which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted.

In this case, Williams pled guilty to all four burglaries charged and acknowledged, at the time of sentencing, that the restitution amounts contained in his PSI report (and precisely duplicated in the district court's judgment and sentence) were accurate. Restitution, as ordered by the district court, was therefore appropriate. *See Fales v. State,* 908 P.2d 404, 412 (Wyo.1995) and *Jackson v. State,* 891 P.2d 70, 76 (Wyo.1995).

 Had the district court ordered restitution to the insurance company, then Williams would have been accurate in his suggestion that the insurance company's stature as a "victim" would be appropriate "only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer." Wyo. Stat. § 7–9–101(a)(v). Because the judgment and sentence directed restitution to the homeowners rather than their insurance carriers, in clarification of an ambiguous oral pronouncement, Williams has no basis for complaint.

 Nonetheless, Williams persists in his concern that the individual victims may have received a windfall in the form of duplicative insurance and restitution payments, in violation of the collateral source rule. We do not need to ponder whether the victims' insurance carriers will be able to protect themselves adequately in this regard, with or without the aid of Wyo. Stat. § 7–9–110(a) (1997). Suffice it to say that the collateral source rule has application to tort cases and is inapposite in the context of criminal law. *See Miller v. Campbell County,* 901 P.2d 1107, 1112–14 (Wyo.1995).

## V. CONCLUSION

The judgment and sentence of the district court is affirmed in all respects.