2008 WY 86

**James PINKER, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–07–0187.

Supreme Court of Wyoming.

July 22, 2008.

Representing Appellant: Diane Lozano, State Public Defender; and Tina N. Kerin, Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, James Pinker (Pinker), entered a plea of guilty to a violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2007).[1] On July 22, 2006, Pinker inflicted injuries on his two-month-old daughter which caused her serious, permanent, and disabling injuries. Pinker was sentenced to be imprisoned for six to eight years. In addition, he was also ordered to complete restitution to the Office of Healthcare Financing (OHCF), care of ACS Third Party Liability, in the amount of $156,671.92. That was the amount of Medicaid benefits that had been paid on behalf of his daughter as of the date the presentence report prepared in Pinker's case was completed. The presentence report also provided the court with verification that OHCF was "subrogated to the rights of [Pinker's daughter] with respect to any claim that . . . she may have arising from the accident or incident and this subrogation extends to all Medicaid funds paid or to be paid on account of her injuries, and OHCF must be reimbursed for those amounts." It is this provision of the sentence imposed in this case that commands our attention in this appeal, as well as Pinker's assertion that the district court's oral pronouncements concerning restitution conflict with the written sentence.

## ISSUES

[¶ 2] Pinker raises these issues:

I. Is the district court's oral pronouncement of restitution controlling, and an illegal sentence?

II. Did the district court exceed its statutory authority in awarding restitution to the Office of Healthcare Financing, as that entity is not a "victim" as defined by statute?

The State conforms its statement of the issues to those raised by Pinker.

## FACTS AND PROCEEDINGS

[¶ 3] From the outset of these proceedings, it was evident that Pinker intended to enter a plea of guilty to the charge against him. On February 16, 2007, Pinker entered a plea of guilty, as planned. Pinker gave a factual basis for his plea, but the State was not satisfied with the accuracy of that recitation because Pinker tended to minimize his culpability. The State gave a recitation of the facts it intended to prove at trial, if necessary. Those facts consisted mainly of conflicting statements given by Pinker to police investigators that were considerably more incriminating than the recitation of facts he owned up to, at his final arraignment. It was agreed that between those two versions of the events of July 22, 2006, the district court had a factual basis adequate to support the plea of guilty.

[¶ 4] A bit of background about Pinker is pertinent to this discussion, so as to provide context for the issues presented by the appeal. Pinker was born in 1987 and was 19 years of age at the time of his crime. He had legal and substance abuse difficulties throughout his teenage years, and his problems were addressed in both criminal and juvenile courts. He did manage to graduate from high school in 2005, but only with special assistance. He held a few menial jobs both during and after high school, for short periods of time. He was working at a local truck stop at the time of sentencing in this case. Pinker and his wife of a few months lived in a small apartment with their infant daughter. Pinker's wife did not work, but rather cared for the child most of the time, unless Pinker was not working. On the date of the crime, July 22, 2006, Pinker was at

---

1. **§ 6–2–502. Aggravated assault and battery; penalty.**

    **(a) A person is guilty of aggravated assault and battery if he:**

    **(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;**

    (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

    (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

    (iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

    **(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.** [Emphasis added.]

home with the child. He received a call from his employer requiring him to come to work to perform mandatory overtime. He was in the process of getting ready to take the child to a care-giver when the incident that led to her injuries occurred. On July 23, 2006, Pinker and his wife took the child to the local hospital because of the symptoms she was exhibiting. The child was examined and released to return home with her parents. Pinker did not reveal to hospital personnel what had happened at home (i.e., that he had dropped her on her head—either accidentally or intentionally). The child's condition worsened over the next 24 hours, and on July 24, 2006, Pinker again presented her at the local hospital for treatment. The child was flown to Denver where she was treated for traumatic head injury (non-accidental, but consistent with child abuse). The child was in foster care at the time of the proceedings in this case.

[¶ 5] The plea agreement was summarized at Pinker's guilty plea proceeding. Also, a detailed written statement of the provisions of the plea agreement was filed with the district court prior to those proceedings:

### PLEA AGREEMENT

PURSUANT to Rule 11 of the Wyoming Rules of Criminal Procedure, the above referenced parties have entered into the following agreement as it concerns the disposition of the criminal charges filed in this Docket.

The State of Wyoming, represented by Assistant District Attorney Tillie Routh, and the above named Defendant **JAMES PINKER**, represented by Diane Lazano, concerning the disposition of the criminal charges contained in the above referenced docket, agrees as follows:

THE DEFENDANT hereby agrees to plead guilty to the following counts as set forth in the Citation, Information or Amended Information filed in this matter:

THE DEFENDANT agrees to plead guilty to the charge of Aggravated Assault, serious bodily injury, as charged in Count I of the Information filed herein, in violation of W.S. § 6–2–502(a)(i).

FURTHER, the Defendant expressly agrees to provide a complete and truthful factual basis for all charges subject to this agreement and further understands the Court may not accept this agreement or any sentence recommendation made by either party.

THE STATE OF WYOMING agrees that if the DEFENDANT fully and completely satisfies the requirements set forth above, the STATE OF WYOMING shall make the following sentencing recommendations to the court:

1. **As to Count 1, a sentence not less than eight (8) nor more than ten (10) years, with a referral to Boot Camp.**

FAILURE of the Defendant to respond to this offer 20 days prior to the date of trial will be considered by the State as a rejection and as a result the offer will be rescinded.

IN THE EVENT that the Defendant accepts the State's offer, THE DEFENDANT agrees and understands that by entering this agreement and by entering the above plea(s) that the Defendant is giving up the right to a trial in this/these matters, the right to call and confront witness(es) in said trial, the right to remain silent as to a factual basis for this matter or as to any Pre–Sentence Investigation Report required in this matter, and the right to appeal any charges, means by which the evidence/statements were obtained, and defects in charging documents or jurisdiction.

THE DEFENDANT agrees and understands that the Defendant is responsible for restitution for all victims of the Defendant's actions, *including victims of any dismissed or uncharged incidents referenced above.* The Defendant agrees and understands regardless of any other provision of the agreement the State shall request restitution for these victims and the Court shall order the Defendant to pay restitution as the Court deems appropriate.

THE DEFENDANT agrees and understands that the attorney for the State, as an officer of the Court, is required to

correct any factual mistake or misrepresentation made to the Court and to inform the Court of any omission of criminal history or bond violations or violations of law which occur while Sentencing in this matter was pending.

THE DEFENDANT understands and agrees that the Court is not in any way bound by this recommendation and that the Court may sentence the Defendant otherwise within the maximum penalties provided by law.

THE DEFENDANT understands and agrees that in the event the Court chooses to disregard the proposed plea agreement the Defendant may *NOT* withdraw the plea(s) entered.

THE DEFENDANT understands and agrees to obey all laws and any bond conditions to which the Defendant is subject while he is released from custody pending sentencing. The DEFENDANT agrees that any violation of this agreement or bond may entitle the State to withdraw its sentencing recommendation and that the Defendant shall *NOT* be allowed to withdraw the plea(s) entered. [Emphases in original.]

[¶ 6] We do not consider the above-form a model. However, with a little thoughtful editing and attention to detail, it is certainly a workable starting place and a vast improvement over an informal oral agreement. The agreement was signed by a representative of the district attorney's office, by Pinker's attorney, and by Pinker. A presentence report (PSR) was prepared and its author questioned the appropriateness of Pinker being sent to Boot Camp, as provided in the Plea Agreement. At sentencing, the district attorney stood by its commitment to recommend Boot Camp as part of the sentence. Pinker objected to the PSR on the basis that the remarks/recommendations made by its author went beyond the scope of the information that is appropriate in a PSR. See W.R.Cr.P. 32(a)(2).[2] As a remedy, Pinker asked that the affidavit of probable cause included in the PSR be disregarded by the trial court, that the trial court disregard the PSR's questioning of the gravamen of the plea agreement, and that the district court cause a copy of the transcript of the guilty plea proceeding be attached to the PSR. The district court granted relief as to that last item, and a copy of the guilty plea proceedings is attached to the PSR in the record on appeal.

**Effect of Oral Pronouncement**

[¶ 7] Pinker claims that the restitution portion of the sentence, as written in the sentencing order, is an illegal sentence because it is inconsistent with, and irreconcilably in conflict with, the oral pronunciation of the sentencing court made at the sentencing hearing. A long-recognized rule of this Court is that where there is conflict between the sentence as articulated at sentencing, and the written sentence, the oral sentence prevails. The determination of whether a sentence is illegal is a question of law, which we review *de novo*. *Barnes v. State*, 2008 WY 6, ¶ 11, 174 P.3d 732, 736 (Wyo.2008).

[¶ 8] At the guilty plea proceedings, the district court indicated that it was uncertain as to what the amount of restitution would be, because the victim's treatment was ongoing and would last as long as she lived. At the time the district court rendered its oral sentence, it had a report available to it indi-

---

**2.** (2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;

(B) Verified information stated in a nonargumentative style containing an assessment of the financial, social, psychological, and medical impact upon, and cost to, any individual against whom the offense has been committed and attaching a victim impact statement as provided in W.S. 7–21–103 if the victim chooses to make one in writing. In any event the report shall state that the victim was advised of the right to make such a statement orally at the defendant's sentencing or in writing. If the victim could not be contacted, the report shall describe the efforts made to contact the victim;

(C) Unless the court orders otherwise, information concerning the nature and extent of non-prison programs and resources available for the defendant; and

(D) Such other information as may be required by the court.

cating that restitution up to that point appeared to be about $156,000.00, but would probably go higher. Although the sentencing court and the parties appeared to be in agreement that it was very unlikely that Pinker would ever be able to pay any restitution, and little attention was given to detail in fashioning a realistic restitution order that was arrived at in the way contemplated by the governing statutes, eventually the district court made this oral pronouncement with respect to restitution: "I don't think it is likely Mr. Pinker will ever make substantial restitution. The Court will order that he make restitution in whatever amount winds up being appropriate not to exceed $200,000.00 because it's ongoing. We don't know what the final amount will be." In the oral pronouncement, the district court did not name a "victim" who was eligible to receive restitution. In the written sentence, the district court set restitution at $156,671.92 and identified a victim (precisely what was advanced by the PSR). The record on appeal contains evidence that will support only that latter sum as the correct amount of restitution owing at the time of sentencing.

[¶ 9] With respect to restitution, Wyo. Stat. Ann. § 7–9–103 (LexisNexis 2007) provides:

### § 7–9–103. Determination of amount owed; execution.

(a) As part of the sentencing process including deferred prosecutions under W.S. 7–13–301, in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim.

(b) In every case in which a claim for restitution is submitted, **the court shall *fix* a reasonable amount as restitution owed to each *victim* for actual pecuniary damage resulting from the defendant's criminal activity,** and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction or in the order placing the defendant on probation under W.S. 7–13–301. In determining the amount of restitution, the court shall consider and include as a special finding, each victim's reasonably foreseeable actual pecuniary damage that

will result in the future as a result of the defendant's criminal activity. A long-term physical health care restitution order shall be entered as provided in W.S. 7–9–113 through 7–9–115.

(c) The court shall order the defendant to pay all or part of the restitution claimed or shall state on the record specific reasons why an order for restitution was not entered. If the court determines that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay in the future, the court shall enter specific findings in the record supporting its determination.

(d) Any order for restitution under this chapter constitutes a judgment by operation of law on the date it is entered. To satisfy the judgment, the clerk, upon request of the victim or the district attorney, may issue execution in the same manner as in a civil action.

(e) The court's determination of the amount of restitution owed under this section is not admissible as evidence in any civil action.

(f) The defendant shall be given credit against his restitution obligation for payments made to the victim by the defendant's insurer for injuries arising out of the same facts or event. [Emphasis added.]

[¶ 10] The essence of Pinker's argument is that the district court's oral sentence effectively awarded an uncertain and unspecified amount of restitution, not to exceed $200,000.00, and did not name the victim. His claim is that both of these matters are required to be made definite in the oral sentence and, having failed to comply with the statute, the sentence is illegal. We conclude that there is no real ambiguity in the trial court's sentences, both oral and written and, furthermore, there is no real discrepancy or conflict between them. See *Williams v. State*, 949 P.2d 878, 879–80 (Wyo.1997); *Christensen v. State*, 854 P.2d 675, 678–81 (Wyo.1993). Under the circumstances presented here, the plea agreement clearly informed Pinker that he would be required to pay restitution for the treatment provided to

his daughter. The district court mistakenly believed that it could order Pinker to be required to pay restitution in an amount "to be determined." *Id.*, at 681. However, that mistaken belief was corrected prior to entry of the written sentence. The evidence of record fully supported the district court's initial oral findings and that can easily be followed through to the written sentence. Under these circumstances, we must reject Pinker's contention that the oral sentence conflicts with the written sentence, and we also must reject any suggestion that the oral sentence was illegal. We also note that Pinker did not make objections to the restitution award either at the sentencing hearing or after the written sentence was entered of record. See *Chippewa v. State*, 2006 WY 11, ¶¶ 6–7, 126 P.3d 129, 131 (Wyo.2006).

## Authority of the District Court to Order Restitution to OHCF

[¶ 11] Pinker contends that the OHCF is not a victim as defined by the governing statute and, hence, the district court exceeded its statutory authority. As with the issue discussed above, this is a question of law that we review *de novo*. A part of the plea agreement in force in this case made it clear that Pinker would be paying restitution to the victim or victims of his crime. That, of course, was aimed directly and primarily at the costs of caring for and maintaining his daughter. "Victim" is defined by statute: " 'Victim' means a person who has suffered pecuniary damage as a result of a · defendant's criminal activities. An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer." Wyo. Stat. Ann. § 7–9–101(a)(v) (LexisNexis 2007).

[¶ 12] In this regard it is also relevant to consider the provisions of Wyo. Stat. Ann. § 7–9–106 (LexisNexis 2007):

**§ 7–9–106. Factors considered by probation and parole officer, and by court.**

(a) The probation and parole officer or other person directed by the court when assisting the defendant in preparing the plan of restitution, and the court before approving or modifying the plan of restitution, shall consider:

(i) The number of victims;

(ii) The pecuniary damages of each victim including, for those cases within the provisions of W.S. 7–9–113 through 7–9–115, the long-term physical health care cost of the victim;

(iii) The defendant's:

(A) Physical and mental health and condition;

(B) Age;

(C) Education;

(D) Employment circumstances;

(E) Potential for employment and vocational training;

(F) Family circumstances; and

(G) Financial condition and whether the defendant has an ability to pay or whether a reasonable probability exists that the defendant will have an ability to pay.

(iv) Whether compensation has been paid to any victim under the Crime Victims Compensation Act [§§ 1–40–101 through 1–40–119];

(v) What plan of restitution will most effectively aid the rehabilitation of the defendant; and

(vi) Other appropriate factors.

[¶ 13] Wyo. Stat. Ann. §§ 7–9–113, 7–9–114, and 7–9–115 (LexisNexis 2007) provide:

**§ 7–9–113. Restitution for long-term care.**

(a) In addition to any other punishment prescribed by law and any restitution ordered pursuant to W.S. 7–9–102 which did not include long-term physical health care costs, the court may, upon conviction of any misdemeanor or felony, order a defendant to pay restitution to a victim in accordance with the provisions of W.S. 7–9–114 if the victim has suffered physical injury as a result of the crime which is reasonably probable to require or has required long-term physical health care for more than three (3) months.

(b) As used in W.S. 7–9–113 through 7–9–115 "long-term physical health care" includes mental health care.

### § 7–9–114. Determination of long-term restitution; time for order; enforcement.

(a) In determining the amount of restitution to be ordered for long-term physical health care, the court shall consider the factors stated in W.S. 7–9–106 together with an estimated monthly cost of long-term physical health care of the victim provided by the victim or his representative. The victim's estimate of long-term physical health care costs may be made as part of a victim impact statement under W.S. 7–21–103 or made separately. The court shall enter the long-term physical health care restitution order at the time of sentencing. An order of restitution made pursuant to this section shall fix a monthly amount to be paid by the defendant for as long as long-term physical health care of the victim is required as a result of the crime. The order may exceed the length of any sentence imposed upon the defendant for the criminal activity. The court shall include as a special finding in the judgment of conviction its determination of the monthly cost of long-term physical health care.

(b) Restitution ordered under this section shall be paid as provided in W.S. 7–9–108. The restitution order shall be a civil judgment against the defendant and may be enforced by any means provided for enforcing other restitution orders and civil judgments.

### § 7–9–115. Modification of order.

After a long-term physical health care restitution order has been entered, the court may from time to time, on the petition of either the defendant or the victim, or upon its own motion, modify the order as to the amount of monthly payments. Any modification of the order shall only be based upon a substantial change of circumstances relating to the cost of long-term physical health care or the financial condition of either the defendant or the victim. The petition shall be filed as part of the original criminal docket.

[¶ 14] Although the record on appeal does not provide us with any clues as to why these statutes were not consulted, they were not, and no issue is raised by Pinker in that regard.

[¶ 15] We continue our discussion, but not without first noting that there was a general agreement below that Pinker should be required to pay restitution of some sort. How much that should be, and to whom it should be paid, did not appear to be given much thought by anyone, prior to the day of sentencing. The crux of Pinker's argument is that this Court has held that an order of restitution which exceeds the authority granted by the statutes governing restitution would be void, and a void order may be challenged at any time. *Hite v. State,* 2007 WY 199, ¶ 10, 172 P.3d 737, 739–40 (Wyo. 2007).

[¶ 16] This language from the statutory definition of "victim" gives rise to the second issue the parties ask us to resolve: "An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer." In this case, Medicaid paid the enormous medical bills generated by the treatment for the injuries inflicted by Pinker on his daughter. Wyo. Stat. Ann. §§ 42–4–201 through 42–4–206 (LexisNexis 2007) detail the State of Wyoming's right to recover, by way of subrogation, benefits paid for Medicaid services under circumstances like those presented in this case. We resolved a similar issue in *Nixon v. State,* 994 P.2d 324, 330 (Wyo.1999):

> Nixon contends the court's order to pay $95 to the Division is not authorized under the restitution statute. In ordering restitution, the trial court's exercise of discretion is circumscribed by the statutes authorizing restitution. *Aldridge v. State,* 956 P.2d 341, 343 (Wyo.1998). Whether the restitution statutes authorize payment to the Division is a question of law, which we review de novo. *Witt v. State,* 892 P.2d 132, 137 (Wyo.1995). If the trial court's conclusion is in accordance with law, it is affirmed. *Id.* (citing *Parker Land & Cat-*

*tle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993)).

Wyo. Stat. Ann. § 7–9–102 (LEXIS 1999) directs the sentencing court to order payment of restitution to each victim. "Victim" is defined in Wyo. Stat. Ann. § 7–9–101(a)(v) (LEXIS 1999):

> (v) "Victim" means a person who has suffered pecuniary damage as a result of a defendant's criminal activities. An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer.

Nixon contends the Division does not qualify as a victim under the restitution statute because it is an insurer with a right of subrogation. Nixon's argument focuses on whether the Division has a right of subrogation. We agree that Wyo. Stat. Ann. § 27–14–105 (LEXIS 1999) allows subrogation. However, that still leaves the question of whether the Division is an "insurer."

The restitution statute does not define "insurer." Looking to the logical source for a definition, we turn to the Wyoming Insurance Code which defines "insurer" as "any person engaged as indemnitor, surety or contractor in the business of entering into contracts of insurance or annuity" and defines insurance as a contract. Wyo. Stat. Ann. § 26–1–102(a)(xvi), (xv) (LEXIS 1999). The Division is not in the business of entering into contracts of insurance or annuity and does not enter into contracts with employees or employers for insurance. The Insurance Code does not purport to govern the workers' compensation system. Further, the Division was re-quired to pay Deputy Urman's medical expenses which resulted from Nixon's assault. It would be against public policy to allow a criminal defendant to avoid responsibility for damages he caused merely because the injured party was acting within the scope of his employment. Therefore, we hold the Division is not an insurer for purposes of the restitution statute, and the trial court's order is affirmed.

Also see *Whitten v. State,* 2005 WY 55, ¶¶ 20–22, 110 P.3d 892, 897 (Wyo.2005).

[¶ 17] The same basic analysis applies here as well. Also see generally, Kimberly J. Winbush, Annotation, *Persons or Entities Entitled to Restitution as "Victim" under State Criminal Restitution Statute,* 92 A.L.R. 5th 35, § 25 (Insurance company) (2001 and Supp.2008).

[¶ 18] The complexities of this matter were not specifically called to the attention of the district court, nor were they given any serious consideration below. However, based upon the record extant, we decline to hold that the district court exceeded its statutory authority to impose restitution under the circumstances of this case, as demonstrated by the record on appeal available to this Court.

## CONCLUSION

[¶ 19] The judgment and sentence of the district court are affirmed.