2009 WY 6

**James DeMasio MARTINEZ,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–08–0025.

Supreme Court of Wyoming.

Jan. 23, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; and David E.

Westling, Senior Assistant, Appellate Counsel. Argument presented by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Cathleen D. Parker, Senior Assistant Attorney General. Argument presented by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, James Demasio Martinez (Martinez), challenges the district court's judgment and sentence for the crime of aggravated assault and battery.[1] The victim of the battery was his girlfriend, Erica Duran (Duran), who was also the mother of his child. He asserts that the district court erred in denying his motion for judgment of acquittal, which was filed at the end of the presentation of the State's evidence. That motion was based on Martinez's theory that the victim of his crime did not suffer a "severe disfigurement." He also contends that the district court failed to correctly instruct the jury on the governing law and that it erred in allowing the testimony of a substitute witness whose identity was not known to the defense until the day of trial. Finally, Martinez asserts that the district court erred in awarding restitution because its findings with respect to restitution were incomplete. We will reverse because the State did not present evidence which satisfied the "severe disfigurement" element of the crime of aggravated assault. However, because the evidence of simple battery is overwhelming, we

will direct entry of a judgment against Martinez for that crime and remand to the district court for sentencing. Because we reverse and remand, we find it unnecessary and imprudent to address the other issues raised.

## ISSUES

[¶ 2] Martinez states these issues:

I. Did the district court err in refusing to grant [Martinez's] motion for judgment of acquittal in the absence of any evidence of a severe disfigurement?

II. Did the [district] court err by giving incorrect and inconsistent jury instructions?

III. Did the [district] court err in allowing the testimony of an undisclosed expert witness?

IV. Did the district court err by assessing fees and restitution in the absence of required findings?

The State's recitation of the issues is virtually identical to that presented by Martinez.

## FACTS AND PROCEEDINGS

[¶ 3] During the late night and early morning hours of May 11–12, 2007, Martinez attacked and beat Duran because he suspected her of cheating on him. He repeatedly punched her in the face and head. The beating continued over a period of an hour and a half. He threatened to kill her. He kicked her in the head and face and tried to stuff both his hands, fingers extended, down her throat. Duran was unable to breathe or scream during that time. She fell in and out of consciousness during the beating. When

---

1. Wyo. Stat. Ann. § 6–2–502 (LexisNexis 2007) (emphasis added) provides:

   **6-2-502. Aggravated assault and battery; penalty.**
   (a) A person is guilty of aggravated assault and battery if he:
   (i) Causes *serious bodily injury* to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
   (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;
   (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in

   defense of his person, property or abode or to prevent serious bodily injury to another; or
   (iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.
   (b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.
   Wyo. Stat. Ann. § 6-1-104(a)(x) (LexisNexis 2007) defines "'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes miscarriage, *severe disfigurement* or protracted loss or impairment of the function of any bodily member or organ[.]"

she was able to, Duran screamed as loud as she could and banged on the door in order to summon help.

[¶ 4] A neighbor heard her cries and called the police. When the police arrived, they handcuffed Martinez and took him away. Many photos were taken of the injuries inflicted on Duran and some of those photos were introduced in evidence at trial. They graphically depict the injuries that Duran tried to describe in her testimony. The injuries included a wound on the inside of her lower lip that required 20 stitches to close. She could not swallow food for five days because her throat was so sore from Martinez's assault. Her throat was swollen and infected and required treatment with antibiotics. She took medication for the pain for about a week. She also suffered a non-displaced fracture to her right sinus, and her right cheekbone was cracked. Her eyes were blackened and bloodied and one was swollen almost shut. She had bruises all over her head, neck, and ears.

[¶ 5] Her throat was better in about six days. The bruising on her head and face lasted a week and a half. She testified that she has scar tissue around her mouth and eye, but that it is not noticeable. She also testified that a friend commented to her that the side of her face where a bone was cracked appeared to be somewhat flatter than the other side of her face. She was treated at the hospital for four hours and then stayed in her home for many days because she did not want to go out looking like the "elephant woman."

[¶ 6] A radiologist, who reviewed Duran's x-rays and her medical file generally, testified and corroborated portions of Duran's testimony. His testimony included his observations that the trauma to Ms. Duran's face was "mild to moderate," and he described the fracture to the sinus as "subtle" (it was not detected upon initial observation of the x-rays). The subtle, non-displaced fracture of the sinus would not be noticeable looking at Ms. Duran. The third issue noted above arose because the emergency room physician who treated Duran was scheduled to provide the medical testimony in this case. Because he was not available on the day of trial, the radiologist was substituted in his place, and Martinez did not receive notice of that substitution until the day of trial. We note in passing, that Martinez was not able to establish any meaningful prejudice because of the last-minute substitution.

[¶ 7] Martinez conceded that he had assaulted Duran, but contended that she did not suffer "severe disfigurement" as contemplated by the aggravated assault statute. He asked the district court to instruct the jury as follows:

> The phrase "disfigurement" implies permanent or long-lasting effect."
>
> "Bodily injury" means physical pain, illness, or any impairment of physical condition.
>
> The term *severe* is defined as "sharp, grave, distressing, violent, extreme, torture, rigorous, difficult to be endured."
>
> The term *disfigurement* is defined as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing, that which renders unsightly, misshapen, or imperfect, or deforms in some manner."

The district court refused those instructions. The failure of the district court to provide additional guidance to the jury on the subject of "severe disfigurement" gives rise to the second issue raised by Martinez in this appeal.

[¶ 8] The district court gave the following instructions:

### INSTRUCTION NO. 6

The elements of the crime of Aggravated Assault and Battery, as charged in this case, are:

1. On or about the 12th day of May, 2007;

2. In the County of Laramie, and State of Wyoming;

3. The Defendant, James Demasio Martinez;

4. Intentionally, knowingly or recklessly under circumstances which showed an extreme indifference to human life;

5. Caused serious bodily injury to Erica Duran;

6. Under circumstances which showed an extreme indifference to the value of human life.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

### INSTRUCTION NO. 7

"Serious bodily injury" means bodily injury which creates severe disfigurement.

[¶ 9] Another issue noted by Martinez was the repetition of "under circumstances which showed an extreme indifference to human life" in the elements instruction. Although the repetition was clearly unnecessary, it appears to be more of a typographical error than a deliberate attempt to emphasize a point detrimental to Martinez's cause.

### DISCUSSSION

### Denial of Motion for Judgment of Acquittal

[¶ 10] A motion for judgment of acquittal is filed pursuant to W.R.Cr.P. 29. Martinez filed his motion after the presentation of the State's evidence and did not, thereafter, offer any evidence of his own. See *Swanson v. State*, 981 P.2d 475, 479 (Wyo.1999).

[¶ 11] The applicable standard of review is this:

Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. *Cloman v. State*, Wyo., 574 P.2d 410 (1978). The question raised is the sufficiency of the evidence to sustain the charge, which is a matter to be determined within the sound discretion of the trial court. *Chavez v. State*, Wyo., 601 P.2d 166 (1979); *Montez v. State*, Wyo., 527 P.2d 1330 (1974). In making that determination the district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. *Russell v. State*, Wyo., 583 P.2d 690 (1978). It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. *Heberling v. State*, Wyo., 507 P.2d 1 (1973), cert. denied 414 U.S. 1022, 94 S.Ct. 444, 38 L.Ed.2d 313 (1973); *Fresquez v. State*, Wyo., 492 P.2d 197 (1971). Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the State. *Chavez v. State, supra; Russell v. State, supra.*

*Aragon v. State*, 627 P.2d 599, 602 (Wyo. 1981).

[¶ 12] This argument is limited to the single issue of whether or not there was sufficient evidence so as to allow the jury to deliberate the aggravated assault charge when there was no evidence that Duran suffered a "severe disfigurement" as contemplated by the aggravated assault statute.

[¶ 13] In *Kelly v. State*, 2007 WY 45, ¶¶ 12–23, 153 P.3d 926, 929–31 (Wyo.2007), we held as follows:

In his first issue, Mr. Kelly claims the State's evidence was insufficient to show he caused Mr. Osmon "serious bodily injury." He asserts the evidence presented did not show the injuries he inflicted upon Mr. Osmon created a substantial risk of death or caused severe disfigurement or loss or impairment of any bodily member or organ. Without such evidence, he contends, the conviction cannot stand.

The State argues the evidence was sufficient to show Mr. Kelly caused serious bodily injury. The State points to the evidence showing Mr. Kelly beat Mr. Osmon with his fists and hit him on the head

with an iron stove grate, causing profuse bleeding and permanent scarring. The State asserts this Court previously held in *State v. Woodward,* 69 Wyo. 262, 240 P.2d 1157, 1160 (Wyo.1952), albeit under a different statute, that evidence of profuse bleeding, bruising and a head laceration resulting from a beating was sufficient to support an aggravated assault conviction. The State also cites *Lucero v. State,* 14 P.3d 920, 923 (Wyo.2000) in which we said the term "serious bodily injury" does not have a technical legal meaning so different from its ordinary meaning that an instruction defining the term for a jury is necessary.

The difficulty with the State's assertions is that the current statute specifically identifies the sort of bodily injury a defendant must cause in order to be convicted of aggravated assault under § 6–2–502(a)(i). Pursuant to the definition of serious bodily injury applicable to the aggravated assault statute found in § 6–1–104(a)(x), the injury must: 1) create a substantial risk of death; 2) cause miscarriage; 3) cause severe disfigurement; or 4) cause protracted loss or impairment of the function of any bodily member or organ.

This Court has specifically considered whether injuries constituted "serious bodily injury" within the meaning of the statutes in two cases. In *O'Brien v. State,* 2002 WY 63, 45 P.3d 225 (Wyo.2002), the State claimed the victim was beaten so savagely that his life was endangered and his injuries created a substantial risk of death. The State presented medical testimony showing the victim's jaw was broken at the back of the joint, a break that rarely results from a blow from a fist. The State also presented medical testimony indicating the break required surgery to prevent the victim's tongue from blocking his airways. We held this evidence was sufficient to support the jury's determination that the defendant caused serious bodily injury.

In *Cazier v. State,* 2006 WY 153, 148 P.3d 23 (Wyo.2006), the State presented evidence that the victim was hospitalized for several days after being whipped with a cable. The State also presented medical

testimony indicating the injuries were "extremely remarkable" and caused chemical abnormalities in the victim's body. Additionally, the State presented photographs showing numerous wounds on the victim's head, face and body and the victim showed the jury the scars that still existed eight months after the assault. We held the jury could have concluded from the evidence that the victim had, at a minimum, suffered severe disfigurement; therefore, the State met its burden of proving the defendant caused serious bodily injury.

Under the particular facts presented in *O'Brien* and *Cazier,* we held rare, remarkable injuries that required surgery or resulted in inpatient hospitalization and scarring constituted serious bodily injuries within the meaning of § 6–2–502(a)(i). Although Mr. Osmon was left with a scar, his injuries did not result in inpatient hospitalization or surgery. Also, there was no testimony, as there was in *O'Brien,* suggesting Mr. Osmon's injuries were life threatening.

Additionally, the manner in which Mr. Osmon and the emergency room responded raises questions about the seriousness of his injuries. Mr. Osmon cleaned his wounds and went back to bed after the assault. He testified he did not think he was seriously injured at the time. He sought medical treatment only when Officer Seeman persuaded him to do so. At the emergency room, his wounds were cleaned, he was given an antibiotic and he was released. His wounds did not require stitches, inpatient hospitalization, surgery or follow-up medical treatment. He suffered no broken bones. The scar on his scalp left by the stove grate was above his hairline and no evidence was presented showing it was readily visible at the time of trial.

Under the circumstances, we have no choice but to conclude the evidence did not support a verdict finding Mr. Kelly caused Mr. Osm[e]n serious bodily injury as the term is defined in our statute. No evidence was presented showing the injuries inflicted on Mr. Osmon created a substantial risk of death or caused severe disfig-

urement or loss or impairment of function of a bodily organ or member. (FN2) While there is no question about the savageness of the attack, the nature of the attack is not the focus of the inquiry under the language the Wyoming legislature has chosen to employ. Instead, under Wyoming's statutory language, the focus of the inquiry is the nature of the injuries inflicted. Ferocious as the attack may have been, the injuries Mr. Osmon sustained did not result in serious bodily injury within the meaning of the aggravated assault statute.

Our holding is in accord with the results reached in other jurisdictions sharing the same or substantially similar statutory language. To sustain a conviction for aggravated assault, the vast majority of cases from these jurisdictions require evidence showing the injury created a substantial risk of death or caused severe disfigurement or protracted impairment of a bodily function or member. In *State v. Pheng*, 2002 ME 40, 791 A.2d 925 (Me.2002), for example, the State presented evidence showing the victim was bleeding and unconscious, was transported to the hospital by ambulance, remained hospitalized for several days, missed the first quarter of school because of his injuries and could not eat solid food for several months after the attack. The court held the evidence was sufficient to show serious bodily injury within the meaning of the Maine statute. (FN3)

Similarly, in *Fleming v. State*, 604 So.2d 280, 292 (Miss.1992), the court held the evidence was sufficient to show serious bodily injury under Section 210.0 of the Model Penal Code (1980)(FN4) where the victim was hospitalized for four days; he suffered a laceration of the scalp requiring sutures, a non-displaced fracture of the left jaw bone and a comminuted fracture of the left forearm requiring surgery to attach a compression plate and perform a bone graft; and he was unable to work for four weeks. See also *State v. Flores*, 1998 MT 328, 292 Mont. 255, 974 P.2d 124 (1998) (holding the victim suffered a serious bodily injury where the evidence showed he sustained a wide, deep, gouge-wound to his

right forearm exposing torn muscle, tissue, and bone; the injury precluded him from working in his pre-injury occupation; and he underwent physical therapy and, at the time of trial, still could not make a closed fist); *Commonwealth v. Lewis*, 2006 PA Super 314, 911 A.2d 558 (2006) (holding the evidence was sufficient to sustain the conviction for aggravated assault where the defendant punched the victim in the stomach and face; the victim was in an unconscious guarded condition in the emergency room after being intubated and placed on a ventilator, had multiple facial lacerations many of which penetrated the muscle tissue down to the facial bones, and chip fractures to her cheekbone; she was hospitalized for nine days; blood was drained from her stomach to prevent aspiration pneumonia; her wounds were sutured; she needed someone to care for her for a month; she could not eat solids until the stitches were removed; she missed work for three months; and she still had scars on her face at the time of trial.)

Of equal significance to our conclusion, are cases from jurisdictions having similar statutory language to Wyoming where courts have held injuries did not constitute serious bodily injuries. In *Moore v. State*, 739 S.W.2d 347 (Tex.Crim.App.1987), for example, the defendant hit the victim in the face and stabbed him in the back with a knife. After the assault, the victim went home and laid down on the couch. When he got up from the couch, he noticed blood in the spot where he had been lying. The police were notified and they convinced the victim to seek treatment. He was taken by ambulance to the emergency room where he was treated and released. The court held the evidence was insufficient to show he sustained serious bodily injury because there was no showing the injury was life threatening or caused permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. See also *State v. Kane*, 335 N.J.Super. 391, 762 A.2d 677 (Ct.App.Div.2000) (holding that victim who received six stitches over her left eye and a broken

nose when she was struck in the face did not sustain "serious bodily injury").

The above cases are representative of the many cases in which courts have considered whether an injury constituted "serious bodily injury" within the meaning of statutes containing language similar to § 6–1–104(a)(x). To support a conviction for aggravated assault, nearly all of the cases require injuries significantly more serious than those Mr. Osmon sustained. Given the express language contained in our statute defining serious bodily injury as an injury creating a substantial risk of death or causing severe disfigurement or protracted loss or impairment of the function of any bodily member or organ, we hold the evidence was not sufficient to support Mr. Kelly's conviction for aggravated assault. . . .

> (FN2.) In closing, the State argued that skin is the human body's primary organ and the blow to Mr. Osmon's head with the stove grate caused permanent scarring and impaired the skin. However, no evidence was presented showing the blow caused "severe" disfigurement or "protracted loss or impairment of the function" of Mr. Osmon's skin. Absent such evidence, the State simply did not prove the assault caused serious bodily injury.
>
> (FN3.) The Maine statute defines "serious bodily injury" for purposes of aggravated assault as: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health." 17–A M.R.S.A. 2(23) (1983).
>
> (FN4.) Section 210.0 defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

Also see *Daniel v. State*, 2008 WY 87, 189 P.3d 859 (Wyo.2008); *Sarr v. State*, 2003 WY 42, ¶¶ 6, 36–40, 65 P.3d 711, 714, 719 (Wyo.

2003); Tracy A. Bateman, Annotation, *Sufficiency of Bodily Injury to Support Charge of Aggravated Assault*, 5 A.L.R. 5th 243 (1992 and Supp.2008). Many of the cases cited in our *Kelly* opinion, and many of the cases included in the above-cited annotation, draw attention to the circumstance that the maximum penalty for battery is six-months of imprisonment, whereas the maximum sentence for aggravated battery is ten years of imprisonment, a 20–fold difference. This difference in the potential penalty suggests that the legislature intended that the crime of aggravated assault be based upon injuries significantly more serious than those suffered by Ms. Duran in this case. We hasten to add that Martinez's conduct was despicable, reprehensible and brutal, but what the law has recognized as battery, and what it has recognized as aggravated battery, is separated by a considerable chasm which the legislature may want to address.

[¶ 14] Based on the language used in the Wyoming Statute, our existing precedents on the subject, as well as those of many of our sister states, we are compelled to conclude that the State failed to introduce evidence that Duran suffered "severe disfigurement" as contemplated by the governing statute. No amount of discussion or analysis has allowed us to alter this conclusion.

[¶ 15] However, as we held in *Kelly*:

> When we reverse a conviction for an offense, and the jury verdict supports conviction of a lesser-included offense, we have the authority to order re-sentencing on the lesser-included offense. *Goodwine v. State*, 764 P.2d 680 684 (Wyo.1988); *Simonds v. State*, 762 P.2d 1189, 1193 (Wyo. 1988). In this case, the district court appropriately instructed the jury on the offense of battery as a lesser-included offense of aggravated assault. The evidence presented at trial was sufficient to support a jury verdict finding Mr. Kelly guilty of battery. Therefore, we set aside the aggravated assault conviction, order entry of a battery conviction and remand to the district court for re-sentencing on the battery conviction.

*Kelly*, ¶ 24, 153 P.3d at 931–32.

[¶ 16] That is also true in this case and hence, while we reverse Martinez's conviction

for aggravated assault and battery and vacate the district court's judgment and sentence, we order entry of a battery conviction and remand to the district court for resentencing.

### Instruction Errors

[¶ 17] Martinez makes no complaint about the instruction with respect to battery. While there appear to be problems with the instructions associated with the aggravated assault and battery charge, those matters are not sufficiently developed below, nor are they adequately addressed in the briefs filed in this appeal. Moreover, because we reverse as set out above any such issue(s) are moot. Therefore, we decline to address the issues raised with respect to the instructions given in this case.

### Testimony of Undisclosed Witness

[¶ 18] The appearance of a substitute expert medical witness, without there being any significant notice to a defendant, poses a significant concern. However, we deem the error, to the extent it is error, to be harmless under the circumstances of this case, since the medical testimony was primarily directed at "severe disfigurement" and was of little relevance to the battery charge. W.R.A.P. 9.04.

### Assessment of Fees and Restitution

[¶ 19] Martinez asserts that the record will not support the assessment of fees and restitution as set out in the judgment and sentence. Because we have vacated both the judgment and sentence, it is unnecessary for us to address this issue in this appeal. However, we trust that appropriate procedures will be followed upon resentencing. See *Pinker v. State*, 2008 WY 86, ¶¶ 11–18, 188 P.3d 571, 576–78 (Wyo.2008).

### CONCLUSION

[¶ 20] The judgment and sentence of the district court is reversed. We hereby order entry of a battery conviction and remand to the district court to achieve that result and for resentencing on the battery conviction.