2008 WY 87

**Alvah R. DANIEL, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0191.

Supreme Court of Wyoming.

July 29, 2008.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk Allan Morgan, Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Alvah Daniel, Jr., was convicted of misdemeanor battery. He was later charged with felony aggravated assault and battery arising from the same incident after the State discovered that the victim's injuries were more severe than it originally believed. Mr. Daniel moved for dismissal of the felony charge on double jeopardy grounds. The district court denied the motion. Mr. Daniel challenges that decision in this appeal. We affirm.

### ISSUE

[¶ 2] Mr. Daniel presents one issue:

Is the double jeopardy protection of the Wyoming and United States Constitutions violated when a defendant is convicted of aggravated assault and battery after he had previously pled guilty and been sentenced for a misdemeanor battery?

### FACTS

[¶ 3] On Monday, May 15, 2006, at approximately 5:15 p.m., Officers Bruce Haston and John Earnshaw of the Cheyenne police department responded to a report of domestic violence at the apartment Mr. Daniel shared with his girlfriend, Lisa Ridge. At that time, officers observed that Ms. Ridge had sustained several injuries. The officers arrested Mr. Daniel and cited him for misdemeanor battery in violation of Wyo. Stat. Ann. § 6–2–501(b) (LexisNexis 2007).[1] After Mr. Daniel's arrest, Officer Earnshaw persuaded Ms. Ridge to go to the hospital for treatment of her injuries. Both officers discussed Ms. Ridge's condition with medical personnel at the hospital and Officer Haston was informed that Ms. Ridge would be treated and released. The officers then left the hospital. They had no further contact with Ms. Ridge or hospital personnel prior to Mr. Daniel's initial appearance.

[¶ 4] The initial appearance was held on Wednesday, May 17, 2006, at approximately 10:00 a.m. At the hearing, after being advised of his rights, Mr. Daniel requested that he be allowed to plead guilty to the charge. The prosecutor did not object, and Mr. Daniel pled guilty to simple battery and was released from custody.[2] Later that day, Carla Thurin, the executive director of Laramie County Safehouse, reported to the Cheyenne police that the injuries were more severe than originally thought and that Ms. Ridge had been transferred to a hospital in Denver. As a result of the new information, the State conducted further investigation and learned that Ms. Ridge had sustained severe and potentially life-threatening injuries as a result of the attack. The Denver physicians diagnosed a blood clot at the front of Ms. Ridge's brain, possible damage to the blood vessels in her neck, and damage to her lar-

---

1. "A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another." Wyo. Stat. Ann. § 6–2–501(b).

2. Mr. Daniel's misdemeanor record is not part of the record on appeal. There is a suggestion in later proceedings that Mr. Daniel's misdemeanor sentence was 90 days in jail, suspended, with credit for the two days that he was incarcerated.

ynx. The State filed a felony information on June 9, 2006, charging Mr. Daniel with aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i).[3]

[¶ 5] Mr. Daniel filed a *Motion to Dismiss,* contending that the felony charge violated the double jeopardy provisions of the Wyoming and United States Constitutions. The State resisted the motion on several grounds, but, for the purposes of this appeal, only one is relevant. The State contended that the felony prosecution did not violate Mr. Daniel's double jeopardy protection because, at the time Mr. Daniel was charged and convicted, the State was unaware of the gravity of the injuries sustained by Ms. Ridge.

[¶ 6] The district court held a hearing on the motion. The primary issue to be decided was whether the State exercised due diligence in its investigation prior to Mr. Daniel's original guilty plea. At the conclusion of the testimony, the court found that the State had exercised due diligence and denied the motion. Mr. Daniel subsequently entered a conditional guilty plea, reserving his right to appeal the district court's denial of his *Motion to Dismiss.* The district court sentenced Mr. Daniel to 5–7 years imprisonment with 325 days credit for time served. He timely filed a notice of appeal.

## STANDARD OF REVIEW

[¶ 7] This Court reviews *de novo* the question of whether a defendant's constitutional protection against double jeopardy has been violated. *Meyers v. State,* 2005 WY 163, ¶ 8, 124 P.3d 710, 714 (Wyo.2005).

## DISCUSSION

[¶ 8] The Fifth Amendment to the United States Constitution states that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." Article 1, § 11 of the Wyoming Constitution contains a similar provision, stating that "[n]o person shall … be twice put in jeopardy for the same offense." Though the language differs slightly, we have recognized that the two provisions "have the same meaning and are coextensive in application." *Longstreth v. State,* 890 P.2d 551, 553 (Wyo. 1995). The double jeopardy clause prohibits prosecution of a defendant for a greater offense when he has been previously convicted of the lesser included offense. *Ohio v. Johnson,* 467 U.S. 493, 501, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The State concedes that Mr. Daniel's battery conviction is a lesser included offense of aggravated assault and battery and that his second conviction would ordinarily be barred.[4] Nevertheless, the State contends that the second prosecution is permissible because of a long-recognized exception to the double jeopardy rule.

[¶ 9] In *Diaz v. United States,* the Supreme Court held that a defendant previously convicted of misdemeanor assault and battery could be charged with homicide when the victim later died from the injuries inflicted during the assault. 223 U.S. 442, 448–49, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912). Many years later, Justice Brennan remarked in a concurring opinion that a separate prosecution should be permitted "where a crime is not completed or not discovered, despite diligence on the part of the police, until after the commencement of a prosecution for other crimes arising from the same transaction." *Ashe v. Swenson,* 397 U.S. 436, 453 n. 7, 90 S.Ct. 1189, 1199 n. 7, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). The Court later drew upon both these sources in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. In *Brown,* the defendant was first convicted and sentenced for joyriding. 432 U.S. at 162–63, 97 S.Ct. at 2223–24. After his release from jail, he was indicted for theft of the same car and a second charge of joyriding. *Id.* The Court held that the latter two

---

3. Wyo. Stat. Ann. § 6–2–502(a) states: "A person is guilty of aggravated assault and battery if he: (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

4. The district court found that Mr. Daniel's misdemeanor battery charge was not a lesser included offense of aggravated assault and battery. Mr. Daniel contends that this was error and the State concedes the point.

charges were barred on double jeopardy grounds pursuant to the elements test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Id.* at 168–69, 97 S.Ct. at 2226–27. In a footnote citing both *Diaz* and Justice Brennan's concurrence in *Ashe,* the Court stated: "An exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Id.* at 169 n. 7, 97 S.Ct. at 2227 n. 7.

[¶ 10] The policy justification for this exception is clear. As Justice O'Connor recognized, "the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law." *Garrett v. United States,* 471 U.S. 773, 796, 105 S.Ct. 2407, 2420, 85 L.Ed.2d 764 (1985) (O'Connor, J., concurring). The Supreme Court of Ohio has articulated this principle as follows:

> The general rule banning multiple prosecutions for offenses arising out of the same course of conduct is intended to protect the defendant and the general public from the prosecution's misconduct. It insures that neither the defendant nor the public will be subjected to an unnecessary multiplication of legal expenses by conducting multiple trials when only one is necessary. It further insures that the accused will not be unduly harassed by being forced to "run the gauntlet" more times than is necessary. However, these considerations pale when a new offense matures only after the first trial is concluded. When it is impossible for the state to join all substantive offenses at one trial, the inconvenience to the defendant is clearly outweighed by the public's interest in assuring that the defendant does not fortuitously escape responsibility for his crimes. A second trial, under such circumstances, cannot be characterized as harassment, but must be considered as reasonably serving the public need.

*State v. Thomas,* 61 Ohio St.2d 254, 400 N.E.2d 897, 904 (1980), *overruled on other grounds by State v. Crago,* 53 Ohio St.3d 243, 559 N.E.2d 1353, 1355 (1990).

[¶ 11] As the *Thomas* court's use of the word "impossible" implies, the most obvious use of the *Brown* exception occurs when the facts constituting the greater offense do not yet exist at the time the defendant is convicted of a lesser offense arising from the same incident. For example, in *Diaz,* the victim sustained injuries during the commission of the crime, but died after the defendant was convicted for the lesser offense of misdemeanor assault and battery. *E.g., Thomas,* 400 N.E.2d at 904; *People v. Harding,* 443 Mich. 693, 506 N.W.2d 482, 486–87 (1993); *State v. Mitchell,* 682 S.W.2d 918, 920 (Tenn. 1984). Courts, however, have also applied the exception when the evidence of the greater offense existed at the time of the original conviction but the government was unable to discover the evidence despite the exercise of due diligence.

[¶ 12] In *State v. Tolbert,* for example, Mr. Tolbert attacked the victim and was charged with misdemeanor assault. 60 Ohio St.3d 89, 573 N.E.2d 617, 618 (1991). The following day, Mr. Tolbert pled no contest to the charge. *Id.* Later that day, the police were informed that her injuries were more severe than originally thought. *Id.* at 619. Mr. Tolbert was later indicted for felonious assault. *Id.* The Ohio Supreme Court held that the *Brown* exception applied and Mr. Tolbert's prosecution was not prohibited. In determining whether Mr. Tolbert's situation fell within the exception, it stated the following:

> In the present case [Police Sergeant] Hildebrand testified that the day after the assault took place, and only hours after the defendant pled no contest to a lesser offense, the police were first informed that [the victim]'s injuries may have been more severe than first indicated. Until [the victim] was evaluated by her own physician she had no way to confirm the extent of her injuries. In fact, [the victim]'s diagnosis was not final until a week after she was attacked. Therefore, even though the facts necessary to sustain the charge of felonious assault occurred prior to Tol-

bert's plea, these facts were not discoverable despite the exercise of due diligence. *Id.* at 621.

[¶ 13] According to the State, it is this exception that allows prosecution of Mr. Daniel for aggravated assault and battery. Mr. Daniel asserts that the seriousness of the injuries was apparent prior to entry of his guilty plea to battery. He contends that the exception does not apply because the State did not exercise due diligence in learning the extent of the injuries prior to entry of his guilty plea.

[¶ 14] The question of due diligence is one of fact. *Sonat Exploration Co. v. Superior Oil Co.,* 710 P.2d 221, 225–26 (Wyo.1985); *LeBar v. Haynie,* 552 P.2d 1107, 1111 (Wyo.1976). *See also United States v. Stearns,* 707 F.2d 391, 394 (9th Cir.1983). We defer to the district court's findings of fact unless they are clearly erroneous. *See, e.g., LaPlant v. State,* 2006 WY 154, ¶ 10, 148 P.3d 4, 6 (Wyo.2006); *State v. Humphrey,* 2005 WY 131, ¶ 8, 120 P.3d 1027, 1029 (Wyo. 2005). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Robinson v. State,* 2003 WY 32, ¶ 14, 64 P.3d 743, 747 (Wyo.2003). Due diligence is " '[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.' " *Pittman v. State ex rel. Wyo. Workers' Comp. Div.,* 917 P.2d 614, 618 (Wyo.1996) (quoting *Black's Law Dictionary* (6th ed.1990)).

[¶ 15] At the motion hearing in this case, both officers testified regarding their investigation. Upon arriving at the apartment, Officer Haston found that Ms. Ridge "was very hesitant on speaking at first as to what happened." He described this behavior as normal under the circumstances, and said that "in a lot of these situations it seems that the victim is afraid to say anything." Officer Earnshaw described Ms. Ridge's demeanor as "very subdued. She said that she was involved in a physical altercation. She didn't want Mr. Daniel to get in trouble, which is typical of domestic violence victims."

[¶ 16] Officer Haston observed injuries to her left eye and the left side of her face and neck. He also later observed a "good sized bump" on the back of Ms. Ridge's head. Ms. Ridge initially refused medical treatment, but eventually Officer Earnshaw was able to persuade her to be evaluated at the hospital. With regard to the injuries that he observed while at the apartment, Officer Earnshaw testified:

[S]he had red marks, like, on her neck like a finger hold—like a choke hold on her neck. The black left eye, bruising on the left eye. She had a tennis ball knot on the back of her head. I think there was some other bruising around her—redness around the neck and lower facial area.

THE COURT: In terms of injuries was there anything unusual about this person?

THE WITNESS: Not at this time.

[¶ 17] Officer Earnshaw accompanied Ms. Ridge to the hospital and was with her while she waited for treatment. During this time, he took photographs of Ms. Ridge's injuries and waited for her to finish her written statement. Officer Earnshaw testified that there was nothing that caused him particular concern for Ms. Ridge when compared to other domestic violence calls he has handled.

[¶ 18] When he joined Officer Earnshaw and Ms. Ridge at the hospital, Officer Haston "asked [hospital personnel] what [Ms. Ridge's] status was, if she was going to be treated and released. I was told more than likely, yes." The following exchange on that point took place during the hearing:

Q. At this point in your conversation with medical personnel, was there any indication that the injuries were as severe as what we later found them out to be?

A. Oh, no, ma'am. She was sitting on the gurney.

Q. You observed her there?

A. Yes, ma'am. She seemed to be oriented at the time, a lot better than she was earlier.

Q. Did the hospital personnel seem concerned about her welfare?

A. No, they didn't, not at that time.

Q. Your understanding was that she was going to be treated and released?

A. Yes, ma'am.

Further, Officer Earnshaw testified from past experience that, if a victim's condition worsens after law enforcement has left the hospital, the hospital will call to notify the officer of the change in condition. That did not happen in this case.

[¶ 19] Viewing the testimony in the light most favorable to the State, we are unable to conclude that the district court's finding that the State exercised due diligence was clearly erroneous. The evidence indicates that the police officers spent significant time with Ms. Ridge at her apartment and at the hospital. Ms. Ridge initially declined medical treatment and it was only at the urging of the officers that she opted to be evaluated at the hospital. Based upon their observations, the officers did not believe the injuries to be serious. Any concerns that the officers might have had were allayed by the hospital staff. Qualified medical personnel indicated that Ms. Ridge's injuries were not serious and that she would be treated and released. There is no evidence that anyone from the police department or the State had any knowledge, prior to entry of the guilty plea, that Ms. Ridge's condition had deteriorated significantly after the officers left the hospital. There is no evidence in the record indicating that a reasonably prudent police officer, under the circumstances of this case, would have made additional inquiry concerning the extent of the injuries prior to acceptance of the original guilty plea.

[¶ 20] The district court found that "it was reasonable for the police department and ultimately for the district attorney's office to rely upon the information that they received from the hospital personnel after Ms. Ridge had been admitted." *See State v. Higley,* 78 Wash.App. 172, 902 P.2d 659, 665 (1995). There is evidentiary support in the record for that finding and we cannot conclude that it was clearly erroneous. Based on the district court's finding that the State exercised due diligence, we also agree with its legal conclu-

sion that the felony prosecution was not barred by principles of double jeopardy.

[¶ 21] Mr. Daniel also presents a second rationale for overturning his conviction. He asserts that, pursuant to the United States Supreme Court's decision in *Ashe,* his second conviction is barred on collateral estoppel grounds. 397 U.S. at 445–46, 90 S.Ct. at 1195. Application of collateral estoppel in the double jeopardy context bars successive prosecutions in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. *Id.; Brown,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6.

[¶ 22] In *Ashe,* several individuals robbed the participants of a poker game. 397 U.S. at 445, 90 S.Ct. at 1195. Mr. Ashe was accused of being one of the perpetrators. He was tried for robbery of one victim and was acquitted. He was later prosecuted for robbery of another victim from the same incident, and was convicted. *Id.* The Supreme Court determined that the only rational basis for Mr. Ashe's acquittal in the first trial was that the jury did not find that he was one of the robbers. *Id.* Because the first jury had conclusively established that Mr. Ashe was not one of the individuals who committed the crime, the prosecution was prohibited from attempting to litigate that issue in the second trial and the second conviction was invalid. *Id.*

[¶ 23] Mr. Daniel claims that his misdemeanor prosecution for battery firmly established the fact that he caused bodily injury to Ms. Ridge. Aggravated assault and battery requires that the State prove that Mr. Daniel inflicted serious bodily injury. Wyo. Stat. Ann. § 6–2–502(a)(i). Citing *Ashe,* he reasons that these two findings of fact are incompatible and that the State should be estopped from charging him with aggravated assault and battery. We disagree.

[¶ 24] Mr. Daniel's reliance upon the collateral estoppel doctrine is misplaced because there is nothing about his first conviction for simple battery that is inconsistent with his subsequent conviction for aggravated assault and battery. In Mr. Daniel's battery conviction, it was established that he inflicted "bod-

ily injury" on his victim. Wyo. Stat. Ann. § 6–2–501(b). In his conviction for aggravated assault, it was established that he inflicted "serious bodily injury." Wyo. Stat. Ann. § 6–2–502(a)(i). There is no conflict between the two findings. The statutory definition of serious bodily injury expressly incorporates the statutory definition of bodily injury.[5] Accordingly, the finding of bodily injury in the first prosecution does not preclude a finding of serious bodily injury in the second prosecution. The collateral estoppel doctrine does not preclude Mr. Daniel's subsequent prosecution for aggravated assault and battery.

[¶ 25]   Affirmed.

---

**5.** Wyo. Stat. Ann. § 6–1–104(a)(x) states: " 'Serious bodily injury' *means bodily injury* which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." (Emphasis added.)