2009 WY 30

**Rose M. HULL, Appellant (Plaintiff),**

v.

**Michael D'ARCY, Debra Ann D'Arcy, and Jack Dalton, Appellees (Defendants).**

No. S-08-0058.

Supreme Court of Wyoming.

March 5, 2009.

Representing Appellant: Frank J. Jones, Wheatland, Wyoming.

Representing Appellees: Jack John C. Hoard, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]  This appeal concerns the validity of a tax deed.  Rose Hull, the former owner, contends that the tax deed is invalid because she did not receive the statutorily required notice prior to issuance of the deed.  The district court granted summary judgment in favor of the tax deed grantee, Jack Dalton, and the current owners of the property, Michael and Debra D'Arcy.  Ms. Hull challenges that decision.  We find that genuine issues of material fact exist that preclude summary judgment.  Accordingly, we reverse.

## ISSUE

[¶ 2]  Did the tax purchaser comply with the notice requirements set forth in Wyo. Stat. Ann. § 39–13–108(e) (LexisNexis 2007) prior to obtaining the tax deed?

## FACTS

[¶ 3]  Ms. Hull and her husband, Warren Hull, owned a residential property in Guernsey, Wyoming.  The Hulls did not pay the property taxes for 1999 and on July 24, 2000, the Platte County Treasurer conducted a tax sale of the property.  Mr. Dalton paid the delinquent taxes and obtained a certificate of purchase to the property.  In January 2006, Mr. Dalton applied for, and received, a tax deed.  He subsequently conveyed the property to the D'Arcys.  They are the current owners of the property and have made improvements to the property since obtaining ownership.

[¶ 4]  On February 2, 2007, Ms. Hull commenced this action against Mr. Dalton and the D'Arcys alleging that the tax deed is invalid because she did not receive the statutorily required notice.  The defendants generally denied the allegations.  They contended that proper notice was given and that the deed was valid.  The defendants also asserted affirmative defenses and filed counterclaims alleging that the D'Arcys were entitled to reimbursement, pursuant to Wyo. Stat. Ann. § 39–13–108(e)(viii), for taxes they have paid, and pursuant to Wyo. Stat. Ann. § 1–32–207 *et seq.*, for improvements they have made to the property.[1]  Ms. Hull concedes that, if the deed is invalid, she is liable to the D'Arcys for the value of improvements they have made to the property.[2]

[¶ 5]  The parties submitted cross motions for summary judgment.  The defendants supported their motion with Mr. Dalton's affidavit and accompanying exhibits.  Ms. Hull responded with an affidavit of her own, as well as excerpts from Mr. Dalton's deposition.  The parties also submitted legal memoranda in support of their positions. After hearing argument, the district court determined that summary judgment should be awarded in favor of Mr. Dalton and the D'Arcys.  Ms. Hull appeals that decision.

---

1.  The D'Arcys alleged in their counterclaim that they "made substantial improvements spending tens of thousands of dollars and doing substantial work to the subject premises."

2.  If, on remand, Ms. Hull prevails in her claim that the tax deed is invalid, the court must pro-

ceed pursuant to Wyo. Stat. Ann. §§ 1–32–207 *et seq.* and 39–13–108(e)(viii)(B)–(C) to determine and enforce amounts that the D'Arcys are owed for property taxes paid and the value of improvements they have made to the property.

## STANDARD OF REVIEW

[¶ 6] "Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision." *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co.*, 2008 WY 101, ¶ 8, 191 P.3d 125, 129 (Wyo.2008).

## DISCUSSION

[¶ 7] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). *Accord, e.g., Jacobs Ranch Coal Co.*, ¶ 8, 191 P.3d at 128; *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* We view the record in the light most favorable to the party opposing summary judgment and give that party the benefit of all favorable inferences that may be fairly drawn from the record. *E.g., Stevens v. Elk Run Homeowners' Ass'n, Inc.*, 2004 WY 63, ¶ 11, 90 P.3d 1162, 1165 (Wyo. 2004).

[¶ 8] Wyo. Stat. Ann. § 39–13–108(e)(v) sets forth certain requirements for issuance of a tax deed. That provision states, in pertinent part:

(A) The county treasurer shall accept applications and issue tax deeds for unredeemed real property subject to a certificate of purchase not less than four (4) nor more than six (6) years from the date of the original sale for taxes to the person in whose name the certificate of purchase was delivered or his assigns upon proper application, return of the certificate of purchase, payment of fees and proof of compliance with the notice requirements of this section to consist of the fact of personal service and the contents of the notice served in cases where personal service is made, or, in the case of service by publication, a sworn statement attached to a copy of the notice indicating the time of service by the publisher, manager or editor of the newspaper in which publication of notice was made;

(B) Holders of certificates of purchase of real property sold for delinquent taxes, including a holder's or county's assigns, upon application for a tax deed therefor shall furnish proof to the county treasurer:

(I) That at least three (3) months prior to the application a written or printed notice was *served on each person in actual possession or occupancy of the real property and the person in whose name the property was taxed or assessed if upon diligent inquiry the persons can be found in the county;* or

(II) If no person is in actual possession or occupancy of the property and if the person in whose name the property was taxed or assessed cannot be found in the county, that notice was published in a newspaper printed in the county, or if no newspaper is printed in the county, then in a newspaper printed in Wyoming nearest to the county seat of the county in which the property is located. The notice shall be published once a week for three (3) weeks, the first publication not more than five (5) months and the last publication not less than three (3) months prior to the application; and

(III) That notice was sent by certified or registered mail to the record owner and mortgagees, if any, of the real property if their addresses are known or disclosed by the public records.

(C) Notices required by this paragraph shall contain the following:

(I) When the applicant purchased the real property;

(II) In whose name the real property was taxed;

(III) A description of the real property;

(IV) The year the property was taxed or assessed;

(V) When the time of redemption will expire;

(VI) When application for a tax deed will be made;

(VII) The amount of any special assessments for local or public improvements.

(Emphasis added.)

[¶ 9] Examination of the statute reveals that the operative due diligence inquiry is whether the owner is able to be found within the county by the exercise of due diligence. If so, the statute requires that the tax deed applicant provide actual notice of the tax sale details. Otherwise, the constructive notice procedures specified in Wyo. Stat. Ann. § 39–13–108(e)(v)(B)(II) are adequate. In the district court, Ms. Hull contended that she did not receive service of the notice required by Wyo. Stat. Ann. § 39–13–108(e)(v)(B) prior to issuance of the tax deed to Mr. Dalton. Appellees responded with two arguments that are relevant for our review. First, they contended that Ms. Hull received notice because it was mailed to her at her address of record and that the notice was received by her husband. Alternatively, Appellees contended that they complied with the relevant notice provision by giving constructive notice as provided by Wyo. Stat. Ann. § 39–13–108(e)(v)(B)(II). They alleged that constructive notice was sufficient because Ms. Hull could not be found within Platte County with the exercise of due diligence. Consequently, there were two possible issues of fact in the summary judgment proceedings. The first was whether Ms. Hull received actual notice of the tax sale. If she did not, the second question was whether she could be found within Platte County upon the exercise of due diligence.

[¶ 10] Ms. Hull and her husband owned the property as "tenants by the entireties." The couple and their children lived on the property until May 30, 2001, when the house was damaged by a fire. The Hulls moved to Hartville, Wyoming, after the fire. Ms. Hull moved to Wheatland in December 2004.[3] The Hulls separated at some time prior to September 9, 2005, but it is not clear from Ms. Hull's affidavit when the separation occurred, or where the couple was living at the time of the separation.

[¶ 11] Mr. Dalton obtained a certificate of purchase to the property in 2000. He determined that the property was owned by the Hulls, and that their address of record with the Platte County Treasurer was a post office box in Hartville, Wyoming. In 2005, Mr. Dalton sent a letter addressed to both Mr. Hull and Ms. Hull at the Hartville post office box stating his intention to begin the deed application process. Mr. Dalton did not receive a reply to this letter.

[¶ 12] Mr. Dalton also attempted to contact the Hulls by telephone. He called a Hartville telephone number that he obtained from the telephone directory. In that telephone call, he spoke to an unidentified woman he "believe[d]"—but was "not certain—was Mr. Hull's mother." Mr. Dalton indicated in his deposition that he did not have much recollection regarding the substance of that conversation. He recalled asking for Mr. Hull and being told that Mr. Hull was not there. He did not recall whether he asked for information concerning the whereabouts of Ms. Hull.

[¶ 13] Mr. Dalton subsequently published notice in the *Platte County Record–Times* containing the disclosures required by Wyo. Stat. Ann. § 39–13–108(e)(v)(C). This notice was published on August 31, September 7, and September 14, 2005. Mr. Dalton sent a certified letter, return receipt requested, to each of the Hulls at the address of record advising of his intention to apply for the tax deed and including a copy of the published notice. The letters were both signed for by Mr. Hull. Mr. Dalton received no response to the letters.

[¶ 14] Ms. Hull stated in her affidavit that she never received a copy of any of the letters sent by Mr. Dalton and that she did not see the notice published in the newspaper. She asserted that she did not receive any notice of the tax sale or the pending expiration of the redemption period prior to issuance of the tax deed. She said that she

---

**3.** Ms. Hull's affidavit does not reveal where she lived between May 30, 2001 and December 2004. The record does show that the mailing address in the property records was a post office box in Hartville. It is possible that Ms. Hull was incarcerated for part of this intervening period. While the district court's decision letter states that Ms. Hull was on probation part of the time that she lived in Wheatland, Ms. Hull's affidavit states that she was instead on parole.

was told by her attorney during her divorce proceedings in 2006 that the property had been sold for taxes. She specifically stated in the affidavit that she had not authorized Mr. Hull to act as her agent for the purpose of receiving mail. She also stated that she was living in Wheatland at the time notice was provided to Mr. Hull and published in the newspaper. She described her Wheatland residence during the time as follows:

> In December of 2004 I moved to Wheatland, Wyoming, which is in Platte County. During the time involved in the tax deed issue in this case, July, 2005, through January, 2006, I lived in Wheatland, Wyoming. I had experienced an unfortunate situation involving some wrongdoing on my part. During this time period I was on parole through the State of Wyoming.

[¶ 15] In her affidavit, Ms. Hull did not disclose her mailing or residence address during the time she lived in Wheatland. She did not indicate that she ever provided the postal service with a change of address form. She did not dispute that the Platte County records reflected that her mailing address was the Hartville post office box where Mr. Dalton sent the letters. She did not state that she ever instructed Mr. Hull or his mother to provide information concerning her whereabouts to anyone who might inquire. She asserted in her affidavit that the Guernsey schools and the Platte County law enforcement officials knew where she could be found, but she did not indicate that she instructed any individual to provide her location upon inquiry. She did not allege that her name or address was published in any Platte County telephone directory.

[¶ 16] Based upon these facts, the district court granted summary judgment to the defendants. The court explained:

> [Ms.] Hull has presented no evidence that would indicate Dalton should have been on notice that the Hulls were estranged; that Ms. Hull was not living with Mr. Hull; and that Mr. Hull was not forwarding messages or mail to her. In the absence of any such indication, Dalton's efforts were

reasonable and sufficient to meet the statutory requirements.

. . .

> Ms. Hull left the marital home at an unspecified time. . . . She has provided no evidence that she made efforts to change her mailing address, provide a forwarding address, nor to update the county records. Under these facts, it can be said that Hull, by her actions, appointed Mr. Hull as her agent to receive mail, including the letters sent by Dalton.

The district court appeared to conclude that, as a matter of law, Ms. Hull received actual notice of the forthcoming application for a tax deed. In light of Ms. Hull's specific and uncontested statements in her affidavit that she did not receive notice, the conclusion of the district court is apparently based upon its finding that Mr. Hull was Ms. Hull's agent for receipt of mailed notice.[4]

[¶ 17] The party alleging agency has the burden of establishing the existence and nature of the agency relationship. *Fowler v. Westair Enters., Inc.*, 906 P.2d 1053, 1055 (Wyo.1995). "Agency relationships may be classified as express or implied, according to the manner in which the agency is created. . . ." 2A C.J.S. *Agency* § 7 (2008). An implied agency may be determined "from the words or conduct of the parties, depending upon the circumstances." *True v. Hi–Plains Elevator Mach., Inc.*, 577 P.2d 991, 997 (Wyo. 1978). Agency cannot be implied merely from the existence of a family relationship. *See Hoblyn v. Johnson*, 2002 WY 152, ¶ 31, 55 P.3d 1219, 1228 (Wyo.2002).

> Rather, the existence of an agency between a husband and wife is a question of fact, resting upon the same considerations or rules applying to any other agency. Marriage is a factor to be considered in determining if an agency relationship exists, and the effect of the marriage relationship has been said to make it more likely that other circumstances will be found to raise an inference of agency.

---

4. We have never been required to determine what constitutes proper service pursuant to Wyo. Stat. Ann. § 39–13–108(e)(v)(B)(I). *See Thomp-* *son–Green v. Drobish*, 2006 WY 126, ¶ 13, 143 P.3d 897, 902 (Wyo.2006). The parties do not raise that question in this appeal.

41 C.J.S. *Husband and Wife* § 87 (2008) (footnotes omitted).

[¶ 18] In this case, there is simply insufficient information indicating agency to justify a finding that, as a matter of law, Mr. Hull was Ms. Hull's agent. A court considering summary judgment must give the opposing party every favorable inference from the evidence. Here, it appears that the district court weighed or discounted evidence in determining that Mr. Hull was Ms. Hull's agent for service of notice. Ms. Hull specifically stated the following in her affidavit: "I never authorized Warren Hull to act as an agent for me." Despite this evidence, the district court relied upon the fact that Ms. Hull left the address unchanged in the county records. The court apparently inferred that in doing so, she intended that mail concerning the property was to be sent to Mr. Hull, indicating that he was her agent for receipt of mail. It is equally possible, however, to infer that Ms. Hull simply neglected to change her address in the county records, which does not indicate an intent that Mr. Hull be her agent.

[¶ 19] In determining that Mr. Hull was Ms. Hull's agent, the district court also relied extensively upon the South Carolina Supreme Court's decision in *Johnson v. Arbabi*, 355 S.C. 64, 584 S.E.2d 113 (S.C.2003). *Johnson*, however, is distinguishable from the current case. Dr. Arbabi had moved out of the marital home, and Mrs. Arbabi did not forward the tax sale notices to him. As a result, he was unaware of the tax sale until after the tax deed was issued. *Johnson*, 584 S.E.2d at 114. After trial, the Master–in–Equity—the fact finder—found that an implied agency existed. *Id.* at 115. The South Carolina Supreme Court upheld the Master's finding and noted the following facts supporting its conclusion:

> Dr. Arbabi left the marital home in April 1991. Yet, on April 22, 1991, his attorney wrote the County a letter requesting the Assessor's office to send all future tax bills directly to Dr. Arbabi at the [marital home]. Moreover, Dr. Arbabi stated he never returned to the marital home and Mrs. Arbabi delivered the mail either to him or his attorney. This arrangement apparently went on from April 1991 through, at least, November 1992—over a year and a half. Certainly, Dr. Arbabi knew he was going to receive mail related to the [property at issue] during that time period. Yet, there is **no evidence** in the record that Dr. Arbabi at any time filed a change of address form with the post office or wrote the County with another, more appropriate, address for him. Under this evidence, we find that Dr. Arbabi, by his actions, appointed Mrs. Arbabi his agent for receiving any and all mail that was directed to the [marital home].

*Id.* at 117 (emphasis in original).

[¶ 20] In *Johnson*, Dr. Arbabi's failure to change his address with the county or the postal service was only one component of the implied agency. Critically, Dr. Arbabi deliberately acted by writing to the County Assessor, through his attorney, directing that mail related to the property be sent to the marital home. That act foreclosed the possibility that Dr. Arbabi was simply neglectful regarding his address of record. He also received mail from Mrs. Arbabi over an extended period of time, which indicated his consent to this practice. In contrast, there is no evidence that Ms. Hull took any affirmative action after separating with Mr. Hull to cause her mail to be delivered to him. Furthermore, there is no evidence that Mr. Hull ever received any mail intended for Ms. Hull other than the letters sent by Mr. Dalton, or that Ms. Hull ever received any mail sent to the Hartville post office box. Indeed, the record contains nothing to suggest any interaction whatsoever between the Hulls regarding mail received by Mr. Hull. Given this evidence, we conclude that a genuine issue of material fact exists, and summary judgment in favor of Appellees based on the agency issue was inappropriate.

[¶ 21] We next ask if a genuine issue of material fact exists regarding whether Ms. Hull could be found within Platte County upon the exercise of due diligence.[5]

---

5. We note that it is undisputed that Guernsey, Wheatland, and Hartville are all located within Platte County.

Due diligence is generally a question of fact. *Daniel v. State,* 2008 WY 87, ¶ 14, 189 P.3d 859, 864 (Wyo.2008). We have stated that "'the legislature placed upon the shoulders of the tax deed grantee a duty of diligent inquiry to find and serve' the specified individuals." *Thompson–Green,* ¶ 8, 143 P.3d at 900 (quoting *Trefren v. Lewis,* 852 P.2d 323, 328 (Wyo.1993)). "'Diligent' means '[c]areful; attentive; persistent in doing something.'" *Thompson–Green,* ¶ 8, 143 P.3d at 900 (quoting *Black's Law Dictionary* 489 (8th ed.2004)).

> We have described the concept of "due diligence" in another context as follows:
>
>> "The diligence to be pursued and shown ... is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.... Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so."

*Id.* (quoting *Colley v. Dyer,* 821 P.2d 565, 568 (Wyo.1991)). *Accord Daniel,* ¶ 14, 189 P.3d at 864. "The inquiry extends to 'those places where information is likely to be obtained and to those persons who, in the ordinary course of events, would be likely to receive news of or from the absent person[s].'" *Thompson–Green,* ¶ 8, 143 P.3d at 900 (quoting 62B Am.Jur.2d *Process* § 229, at 799 (2005)).

[¶ 22] In *Thompson–Green,* we addressed a similar situation to that presented by the current case. The land at issue was located within Laramie County and was owned by a father and his three sons as tenants in common. *Id.,* ¶ 3, 143 P.3d at 898. The father lived on the property, and one of the three sons lived within Laramie County. *Id.,* ¶ 11, 143 P.3d at 901. That son had specifically instructed his father to provide his contact information, including his address, to anyone who inquired. *Id.* The tax sale buyer, Ms. Thompson–Green, sent several notices addressed to the four owners. All notices were sent to the property. She also attempted to have the sheriff's department serve all owners at the property, and the return of service indicated that the father accepted service for his three sons. Ms. Thompson–Green did not contact the father and ask him where any of the other title owners could be found. The district court ordered summary judgment in favor of the original title owners, and we affirmed.

[¶ 23] We concluded that the undisputed evidence established that the son living within Laramie County could be found upon diligent inquiry.

> A diligent inquiry—one reasonably calculated to locate the other [owners]—would have included an attempt to contact [the father] (this could have been accomplished easily by calling the telephone number [listed in the telephone directory]) and determine what other information he had regarding the location of the other three [owners] (whether at the property's address or elsewhere). One could reasonably expect that such contact, if successful, would have uncovered this information for [one of the sons].

*Id.,* ¶ 11, 143 P.3d at 901. Consequently, pursuant to Wyo. Stat. Ann. § 39–13–108(e)(v)(A) and (B)(I), Ms. Thompson–Green was required to serve actual notice upon the son who was able to be found within the county. Because that service never occurred, the tax deed was invalid. *Id.,* ¶¶ 18–20, 143 P.3d at 903–04.

[¶ 24] With our discussion of *Thompson–Green* serving as the legal context, we now address Appellees' motion for summary judgment. Viewing the evidence in a light most favorable to Ms. Hull, as we must, we infer that an inquiry may have revealed her location. As we recognized in *Thompson–Green,* a diligent inquiry would have included an attempt to determine what information Mr. Hull or his mother had regarding where Ms. Hull could be found. It appears undisputed that they were aware of Ms. Hull's location, however Ms. Hull's affidavit does not conclusively establish that Mr. Hull or his mother would have divulged Ms. Hull's location to Mr. Dalton if asked. In contrast to the facts

presented in *Thompson–Green,* Ms. Hull made no specific allegation that Mr. Hull or his mother had been instructed to disclose her location to those who inquired. Neither did Ms. Hull set forth specific facts that compel that conclusion. That they would have done so, however, is certainly a reasonable inference based on the facts that she set forth. When we consider Ms. Hull's affidavit in the light most favorable to her, we conclude that a genuine issue of material fact existed regarding whether she could be found within the county upon the exercise of due diligence.[6] Consequently, summary judgment in favor of Appellees was inappropriate.

[¶ 25] Reversed and remanded for further proceedings consistent with this opinion.

6. Ms. Hull's affidavit also contains many allegations that her location was generally known and that, in short, Mr. Dalton had merely to ask unspecified residents of Hartville and Guernsey, or law enforcement officials in these towns, to determine where she could be found. Ms. Hull never states specifically where she could be found during the relevant period of time. Even if due diligence under the circumstances included an obligation to inquire of law enforcement or the general public—a dubious proposition—we find her conclusion that this inquiry would have yielded positive results to be speculative at best. The district court properly disregarded this portion of her affidavit.