7

2017 WY 129

**Justin Tanner KING, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S-16-0203

Supreme Court of Wyoming.

October 26, 2017

Representing Appellant: Office of the Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Peter F. Howard, Assistant Attorney General.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

KAUTZ, Justice.

[¶1] A jury convicted Justin Tanner King of felonious restraint, strangulation of a household member, and domestic battery. Mr. King's first trial resulted in a mistrial at his request after the district court determined that the prosecutor asked Mr. King improper questions during cross-examination. Before the second trial began, Mr. King requested that the case against him be dismissed based on the Fifth Amendment's prohibition against double jeopardy. The district court denied Mr. King's motion and Mr. King appeals that decision. We affirm.

### ISSUE

[¶2] The issue in this case is whether the district court erred in denying Mr. King's motion to dismiss after it granted Mr. King's motion for a mistrial.

### FACTS

[¶3] On March 14, 2015, the Fremont County Sheriff's Office received a report from Patricia Barrett that her ex-boyfriend, Mr. King, had assaulted her earlier that evening. Ms. Barrett reported that Mr. King became angry when he learned Ms. Barrett had been in a new relationship after she and Mr. King had separated. Ms. Barrett stated that Mr. King held a knife to her throat, struck her in the face with his fists, and choked her multiple times. He also dragged her through the home by her hair, and eventually forced her into her car and drove the two of them from Riverton, Wyoming, to nearby Lander, Wyoming, all the while threatening to kill her and her children. The victim reported she escaped when Mr. King left her alone in the car while he went inside his friend's home in Lander. Ms. Barrett also reported that Mr. King had stolen cash that was in her purse. Based upon this report, the Fremont County Attorney charged Mr. King with one count each of felonious restraint, strangulation of a household member, aggravated assault and battery, domestic battery, and theft.

[¶4] The case proceeded to a jury trial. On the third day of trial, the following exchange occurred during the State's cross-examination of Mr. King:

> [Prosecutor]. Mr. King, you have denied ever laying a hand on Ms. Barrett or harming her in any way?
>
> [Mr. King]. That's correct, sir.
>
> Q. Do you remember when you first got down here and Detective Jason Cox talked to you?
>
> A. Yes.
>
> Q. You didn't tell Detective Cox what you told these people [the jury], did you?
>
> A. I asked him right off the bat if anything I was willing to testify to was going to help me in any way. And he told me no. I told him, "Well, I'd like to speak to an attorney, family attorney."
>
> Q. He also told you he wanted to hear your side of the story, which you've told us, and you did not tell him what you told these people.

Defense counsel objected and argued the prosecutor was encroaching on Mr. King's exercise of his right to remain silent, and the district court immediately sustained the objection. The prosecutor did not ask Mr. King any further questions and Mr. King rested his case.

[¶5] After a short recess, defense counsel requested a mistrial. Defense counsel argued there was no way to "unring the bell" from the cross-examination questions and that a curative instruction would be insufficient to remedy the problem. The prosecutor argued that his questions were proper because Mr. King had waived his right to remain silent once he decided to testify at trial. The dis-

trict court expressed concern about the prosecutor's questions and took the matter under advisement.

[¶6] After another short recess, the district court heard further argument from both parties on the motion for mistrial. The prosecutor acknowledged his previous understanding of the law regarding Mr. King's right to remain silent was incorrect; however, he explained the questions were not asked with a malicious intent. Instead, he was attempting to impeach Mr. King with comments he had made to law enforcement officers after he was arrested. The prosecutor pointed out the mistake was isolated and he would not broach the subject matter during closing arguments. He argued, for these reasons, the error did not require a mistrial.

[¶7] The district court determined the questions and answers were equivocal. Because the jury had not heard testimony earlier in the trial that Mr. King had made statements to law enforcement officers, the jury could have assumed Mr. King's testimony at trial was inconsistent with prior statements, but could have equally assumed that Mr. King had not made any statements to law enforcement officers at all. For this reason, the district court concluded it had to err on the side of protecting Mr. King's right to remain silent. It determined that any comment on that right amounted to prejudicial error requiring a mistrial and, consequently, granted the motion for a mistrial.

[¶8] The district court set the matter for a new trial. Before that trial, Mr. King filed a motion to dismiss the charges against him based on the Fifth Amendment's prohibition against double jeopardy. After a hearing, the district court denied the motion and explained there was no evidence that suggested the State had intentionally goaded Mr. King into requesting a mistrial. The district court held a second trial and the jury convicted Mr. King of felonious restraint, strangulation of a household member, and domestic battery. The district court sentenced Mr. King to concurrent sentences of three to five years for the felonious restraint and strangulation of a household member convictions, and a concurrent six-month sentence in the county jail for the domestic battery conviction. Mr. King filed a notice of appeal.

## STANDARD OF REVIEW

[¶9] This Court reviews alleged violations of constitutional rights *de novo*. *Montoya v. State*, 2016 WY 127, ¶ 6, 386 P.3d 344, 346 (Wyo. 2016). However, we defer to the district court's findings of fact underlying its determination unless they are clearly erroneous. *Daniel v. State*, 2008 WY 87, ¶ 14, 189 P.3d 859, 864 (Wyo. 2008); *United States v. Tafoya*, 557 F.3d 1121, 1126 (10th Cir. 2009) ("In a double jeopardy goading case, we review the factual findings underlying a trial court's determination for clear error."). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Daniel*, ¶ 14, 189 P.3d at 864.

## DISCUSSION

[¶10] Mr. King argues his double jeopardy rights were violated when the district court denied his motion to dismiss the proceedings against him after the first trial ended in a mistrial at his request. He asserts that the State should be required to justify the necessity of the mistrial to avoid the double jeopardy bar of a re-trial, and the State failed to do so because it violated one of Mr. King's most fundamental rights when the prosecutor commented on Mr. King's right to silence. Mr. King's argument, however, is completely contrary to well-established United States Supreme Court precedent and precedent from this Court.

[¶11] The United States and Wyoming constitutions provide that a person cannot be placed twice in jeopardy of prosecution, conviction, or punishment for the same criminal offense. U.S. Const. amend. V; Wyo. Const. art. 1, § 11. While the language in the two constitutions differ, "they have the same meaning and are co-extensive in application." *Montoya*, 2016 WY 127, ¶ 7, 386 P.3d at 347. These provisions provide a defendant three protections: "1) protection against a second prosecution for the same offense following an

acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense." *Id.* (quoting *Derrera v. State*, 2014 WY 77, ¶ 23, 327 P.3d 107, 113 (Wyo. 2014)).

 [¶12] The United States Supreme Court has explained this protection also includes the defendant's "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). This "valued right" justifies constitutional protection because if the first trial is not completed, a second prosecution may be grossly unfair, it increases the financial and emotional burden on the defendant, extends the period in which the defendant is stigmatized by an unresolved criminal proceeding, and may increase the risk that an innocent defendant may be convicted. *Id.* at 503-04, 98 S.Ct. at 829-30. Thus, the general rule is a prosecutor is entitled to only one opportunity to require a defendant to stand trial. *Id.* at 505, 98 S.Ct. at 830.

 [¶13] However, a re-trial is not automatically barred if the trial is terminated without a resolution of the charges against the defendant. *Id.* Because a mistrial could occur for a variety of reasons, the defendant's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* To balance these interests, the Court determined that when the prosecution requests a mistrial "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.*

[¶14] The Court subsequently balanced these interests when a mistrial is requested by the defendant. In *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Court determined that "quite different principles come into play" when the defendant has elected to terminate the proceedings, and the " 'manifest necessity' stan-

dard has no place in the application of the Double Jeopardy Clause." *Id.* at 672, 102 S.Ct. at 2088. Instead, a re-trial is barred only in circumstances where the prosecutor provoked or goaded the defendant into moving for a mistrial. *Id.* at 676, 679, 102 S.Ct. at 2089, 2091. The Court explained this is a manageable standard as it "merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system." *Id.* at 675, 102 S.Ct. at 2089. Further, the Court made it clear that not all prosecutorial conduct is going to fall into this exception:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. Where a prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, the important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error. Only where the governmental conduct in question is intended to goad the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 675-76, 102 S.Ct. at 2089 (internal quotations and quotation marks omitted).

[¶15] This Court has applied the rule from *Kennedy* multiple times. *See Montoya*, ¶¶ 7-9, 386 P.3d at 347; *Derrera*, ¶ 23, 327 P.3d at 113; *State v. Newman*, 2004 WY 41, ¶ 21, 88 P.3d 445, 452-53 (Wyo. 2004). In each of those cases we acknowledged *Kennedy* and stated: "For double jeopardy to bar re-trial in a case where the district court grants a defense motion for a mistrial based upon prosecutorial misconduct, the defense must show prosecutorial intent to goad the defense

into moving for a mistrial." *Montoya*, ¶ 7, 387 P.3d at 347; *Derrera*, ¶ 23, 327 P.3d at 113; *Newman*, ¶ 21, 88 P.3d at 452-53.

[¶16] Despite our clear precedent on this issue, Mr. King argues that the State carries the burden of justifying the mistrial and cites *Washington* in support of that proposition. As discussed above, *Washington's* requirement that a prosecutor demonstrate "manifest necessity" to avoid the double jeopardy bar applies when the prosecutor has requested a mistrial **over the objection of the defendant**. *Washington*, 434 U.S. at 505, 98 S.Ct. at 829. Because Mr. King requested the mistrial, the double jeopardy bar prohibits a re-trial only if the trial court determined that the prosecutor behaved intentionally to goad Mr. King into requesting the mistrial, regardless of whether the prosecutor's conduct could be viewed as harassment or overreaching. *Kennedy*, 456 U.S. at 675-76, 102 S.Ct. at 2089. In his brief, Mr. King offers no argument as to why *Kennedy* does not control. Mr. King's brief does not even acknowledge *Kennedy* or this Court's precedent applying *Kennedy* in precisely these types of scenarios.

[¶17] The district court correctly analyzed the *Kennedy* standard when ruling on Mr. King's motion to dismiss. Therefore, reversal is justified only if the district court's findings of fact with respect to the prosecutor's intent to goad Mr. King into requesting a mistrial are clearly erroneous. *Daniel*, ¶ 14, 189 P.3d at 864; *Tafoya*, 557 F.3d at 1126. Mr. King does not argue that the district court's factual findings are erroneous, and the record clearly supports the district court's conclusion that the prosecutor did not act with the intent to goad Mr. King into requesting a mistrial.

[¶18] The district court specifically relied on the body language, expressions, and reaction of the prosecutor when the court granted the mistrial. Based on those facts, the court was comfortable concluding the prosecutor did not desire a mistrial in this case. This conclusion is supported by the trial transcript. At the time Mr. King requested the mistrial, the prosecutor argued that the questions he posed to Mr. King were appropriate. However, after a short recess, the prosecutor acknowledged that he misunderstood the law he relied on in his original argument and conceded his questioning encroached on Mr. King's right to silence.[1] He further explained that he did not act maliciously, as he was trying to impeach Mr. King with statements he had previously made. The prosecutor argued that, despite his mistake, the error was not pervasive and did not rise to the level of requiring a mistrial. These comments do not support a conclusion that the prosecutor acted intentionally in the hopes of the trial ending prematurely. Therefore, the district court's factual finding that the prosecutor did not goad Mr. King into requesting a mistrial was not clearly erroneous.

[¶19] Affirmed.

1. The issue of whether the prosecutor's questions were truly improper comments on Mr. King's right to silence is not before this Court. Further, resolution of that question is unnecessary to reach a decision on the issue Mr. King has raised. For that reason, nothing in this decision should be construed as an opinion on the propriety of the prosecutor's questions that lead to the mistrial.